**UNITED STATES ex rel. SINGLETON v. TOD, Commissioner of Immigration.**

(Circuit Court of Appeals, Second Circuit. May 7, 1923.)

No. 208.

1. **Habeas corpus ⊚⟶28—Deportation proceeding reviewed only to ascertain whether jurisdiction was exceeded.**

    The writ of habeas corpus was a proper remedy for reviewing proceeding for the deportation of an alien, but only for the purpose of ascertaining whether or not jurisdiction has been exceeded.

2. **Aliens ⊚⟶32(1)—Judicial hearing must be granted on substantial claim of citizenship.**

    Where one against whom deportation proceeding as an alien unlawfully in the country is pending makes a claim of citizenship which is more than merely frivolous, he is entitled to a judicial hearing on the issue of citizenship.

⊚⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. Aliens ⬚=32(1)—Hearing granted by court on issue of citizenship held judicial.**

Where one held for deportation under the Chinese Exclusion Acts (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼a et seq.), claimed to be a native-born citizen, a hearing on habeas corpus proceeding by a United States District Court on the issue of citizenship, in which the alien was given an opportunity to introduce evidence in support of his claim, was a judicial hearing on that issue.

**4. Habeas corpus ⬚=113(12)—Findings of court below in deportation proceeding not interfered with.**

On appeal from a discharge of writ of habeas corpus to review deportation proceeding, where the lower court had found against relator on the issue of citizenship, the Circuit Court of Appeals is concerned only with determining whether the proceeding in the court below was of a judicial character, and will not interfere with the determination of fact by that court.

**5. Aliens ⬚=32(6)—Administrative proceeding can be introduced in judicial hearing on issue of citizenship.**

In a judicial hearing on the issue of citizenship of one held for deportation as an alien unlawfully within the country, the court may admit in evidence the record of the administrative hearing, though the finding as to the fact of citizenship must be based on proof offered in a judicial proceeding, in view of Rev. St. § 761 (Comp. St. § 1289), providing that in a habeas corpus proceeding the judge or justice shall proceed in a summary way to determine the facts.

Appeal from the District Court of the United States for the Southern District of New York.

Habeas corpus by the United States, on the relation of Joseph M. Singleton, as next friend of Liu Kah, against Robert E. Tod, Commissioner of Immigration at the Port of New York, to secure release from detention under an order of deportation made by the Secretary of Labor. Writ dismissed, and relator appeals. Affirmed.

Maxwell Shapiro, of New York City (Everett Flint Damon, of Boston, Mass., of counsel), for appellant.

William Hayward, U. S. Atty., of New York City (James C. Thomas, Jr., Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before HOUGH and MANTON, Circuit Judges.

MANTON, Circuit Judge. Liu Kah, for whom this writ of habeas corpus was sued out, was a Chinese. He was taken off a train at Charleston, S. C., on October 7, 1921, while traveling in a Pullman drawing room, having boarded the train at Petersburg, Fla. Temporarily he was detained in Charleston county jail, and in a preliminary examination made a statement to the effect that he was 27 years of age and was born in the United States, and had never been in China. He was unable to state the place in this country where he was born, and had no papers to disclose his identity. He could not speak English. He could not give the names of any persons he knew in this country. He claimed that he had never worked in his life, but had borrowed money from his friends, whose names he did not know, nor could he give their addresses, other than stating that they lived in New York.

On October 8, 1921, a warrant for his arrest was issued by the Assistant Secretary of Labor, charging that he was found in the United States in violation of the Immigration Act of February 5, 1917; that he had entered by water at the time and place therein designated by the immigration officials; that he had entered without inspection. On October 11, 1920, he was accorded a hearing, and was informed that he was entitled to be represented by an attorney at this hearing. There he stated that he was born in the United States, and reiterated his former statement, given at Charleston, S. C. He said he did not know the names of his parents, could not remember where he was in 1917 or 1918, that he had never registered for military service, that he knew nothing of the Selective Service Law, and when asked whether he had any evidence to offer, or statements to make, as to why he should not be deported from the United States for the reasons above given, which were explained to him at the beginning of the hearing, he did not answer.

Upon an order of the Department of Labor, on December 3, 1921, the case was reopened for the purpose of receiving additional testimony. A hearing was had in New York on January 17, 1922, at which time counsel appeared on behalf of the appellant. Testimony was then taken in these proceedings, and the appellant stated that he did not tell the truth at his former hearing, for the reason that he did not know why he was arrested. He stated that he was born in Stockton, Cal.; that he had lived there two or three years, until he was four years of age, when his parents died. He said that about May 20, 1896, he went to live on a ranch located at Stockton, where he lived until last year. A witness, Chong, was called to prove the birth of the appellant at Stockton, Cal. This witness stated that he saw the alleged alien when he was three or four years old, and then stated that he saw him as a very young baby, and that his mother told him he was born in Stockton. Another witness testified that the alleged alien told him he was born in Stockton, but that the witness had no personal knowledge of it. Investigation was made by the department at Stockton and in the neighborhood of the ranch where it is said he lived, and he was not known in either place. Thereupon it was concluded by the department that he was in fact an alien and in this country in violation of law, and it was ordered that he be taken into custody and conveyed to San Francisco, Cal., for deportation.

A warrant of deportation was issued, for the reason that he was in the United States in violation of section 6 of the Chinese Exclusion Act of May 5, 1892 (chapter 60, 27 Stat. 25), as amended by the Act of November 3, 1893 (chapter 14, 28 Stat. 7 [Comp. Stat. § 4320]), being a Chinese laborer not in possession of a certificate of residence, and that he had entered the United States in violation of section 7 of the Chinese Exclusion Act of September 13, 1888 (Comp. St. § 4308), and the Act of February 5, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼a et seq.) and that he had entered by water at a time or place therein designated by the immigration officials, and that he had entered without inspection. Appellant was then advised of the charges made against him and of his

right to appeal. He thereupon sued out a writ of habeas corpus. The Commissioner of Immigration filed a return. No traverse was filed to the return, and thereafter, on September 22, 1922, when the matter came on for a hearing in the United States District Court, an order was made setting the matter down for trial at an equity term to be held in October, 1922, for the purpose of determining whether or not the appellant was born in the United States. Such a hearing was accorded the appellant, at which time the testimony taken before the immigration inspector at. Charleston and the record of the hearing before the board of special inquiry at the barge office in New York harbor pursuant to an order of the Secretary of Labor was introduced in evidence, and the appellant was then offered an opportunity to offer such evidence as he desired. The department contended that from the records of these hearings and what took place then there was evidence, prima facie, justifying the claim that the appellant was not a citizen of the United States. The appellant and a witness above referred to were called and gave their testimony orally, being examined and cross-examined.

[1, 2] The main contention upon this appeal is that this did not constitute a judicial trial, and that the decision was not a judicial determination of the claims of the appellant. The writ of habeas corpus is a proper remedy for reviewing proceedings for the deportation of an alien, but only for the purpose of ascertaining whether or not jurisdiction has been exceeded. United States v. Jung Ah Lung, 124 U. S. 621, 8 Sup. Ct. 663, 31 L. Ed. 591. The Supreme Court has recently said in Ng Fung Ho v. White, 259 U. S. 276, 42 Sup. Ct. 492, 66 L. Ed. 938 (a Chinese deportation case):

"If the jurisdiction of the Department of Labor may not be tested in the courts by means of the writ of habeas corpus, when the prisoner claims citizenship and makes a showing that his claim is not frivolous, then obviously deportation of a resident may follow upon a purely executive order, whatever his race or place of birth. But where there is jurisdiction, a finding of fact by the executive department is conclusive (U. S. v. Ju Toy, 198 U. S. 253); and courts have no power to interfere unless there was either denial of a fair hearing (Chin Yow v. United States, 208 U. S. 8), or the finding was not supported by evidence (Amer. School v. McAnnulty, 187 U. S. 94), or there was an application of an erroneous rule of law (Gegiow v. Uhl, 239 U. S. 3). To deport one who so claims to be a citizen obviously deprived him of liberty, as was pointed out in Chin Yow v. United States, 208 U. S. 8, 13. It may result, also, in loss of both property and life, or of all that makes life worth living. Against the danger of such deprivation without the sanction afforded by judicial proceedings, the Fifth Amendment affords protection in its guaranty of due process of law. The difference in security of judicial over administrative action has been adverted to by this court"— citing U. S. v. Woo Jan, 245 U. S. 552, 38 Sup. Ct. 207, 62 L. Ed. 466.

[3] In the proceedings below, it was determined that the appellant was entitled to a judicial hearing. The question here is whether he was accorded such a hearing within the purview of the Supreme Court decision above referred to. Under this pronouncement of that court, he was entitled to a hearing in a court of justice established by law, wherein his rights are recognized and protected by law and determined by the law of the land. When a regularly constituted court of justice is clothed with authority to hear and determine a question

of fact, or a mixed question of fact and law, upon the evidence, written or oral, produced before such court, and thereafter renders a decision affecting the material rights or interests of one or more persons or bodies corporate, such proceedings by the court must be regarded as judicial.

The relator objects that in the court below the administrative proceedings were introduced in evidence and considered by the court in its determination, and that this deprived the appellant of the right of cross-examination. It is said that the court below made a determination upon unsworn statements of the immigration inspectors, and this without opportunity of relator's counsel to cross-examine the deposing witnesses.

[4] We are concerned only on this appeal with determining the question whether the proceedings were of a judicial character. The court below heard the testimony offered by the appellant and his witness, and concluded that it did not believe the appellant's testimony or that of his witness, and that they did not support his claim that he was born in this country, pointing out the fact that the appellant was found surreptitiously in the drawing room of a car under suspicious circumstances, supported by the fact that he did not register under the Draft Act, and showed no indicia of citizenship, and could not speak English. We will not interfere with this determination of fact. In United States ex rel. Ross v. Wallis (C. C. A.) 279 Fed. 401, we held that in a proceeding to deport an alien the Department of Labor is not bound by the rules of evidence, and may admit hearsay evidence; the only limitation upon its procedure being that a hearing, though summary, should be fair, and where it appears on such hearing that proof of want of alienage was dependent upon the testimony of the appellant and the improbabilities of his statement, a finding of fact based thereon will not be reversed on appeal. This court held in Sit Sing Kum v. United States, 277 Fed. 191, that under the Chinese Exclusion Act of May 5, 1892, § 4 (Comp. St. § 4318), requiring any person of Chinese descent to be adjudged to be unlawfully within the United States, unless he establishes his right to remain, the burden is upon the Chinese persons to prove their right to remain, and they can be deported if they fail to sustain such burden. The court below gave counsel opportunity to present such evidence as he might have, setting the case on the equity calendar for such purpose.

[5] We think that, on the hearing thus accorded the appellant on the habeas corpus proceeding, it was not error to receive in evidence records of the hearings theretofore granted the appellant. The appellant was entitled to a judicial hearing on his claim of citizenship. The finding as to this fact must be based upon proof offered in a judicial proceeding. The Supreme Court in Fong Yue v. United States, 149 U. S. 730, 13 Sup. Ct. 1016, 37 L. Ed. 905, in speaking of proceedings under the act of 1892 (Chinese Exclusion Act), said:

"It is simply the ascertainment, by appropriate and lawful means, of the fact whether the conditions exist upon which Congress has enacted that an alien of this class may remain within the country."

In habeas corpus proceedings by virtue of section 761 of the United States Revised Statutes (The Judiciary, c. 13), being Comp. St. § 1289, it is provided that the judge or justice shall proceed in a summary way to determine the facts of the case by hearing the testimony and arguments and thereupon to dispose of the party as law and justice require. We think the appellant here has had full opportunity to prove his claim, and a fair trial upon the issues, to which he was entitled to a judicial hearing under the law of the land.

Order affirmed.