# In re Vicente CERVANTES-Torres, Respondent

### File A71 638 181 - San Diego

### *Decided June 7, 1996*

### U.S. Department of Justice
### Executive Office for Immigration Review
### Board of Immigration Appeals

An alien is not barred from demonstrating continuous physical presence for purposes of section 244(a)(1) of the Immigration and Nationality Act, 8 U.S.C. 1254(a)(1) (1994), when he has made brief, casual, and innocent departures from the United States during the pendency of his deportation proceedings, and when the Immigration and Naturalization Service has readmitted him as a returning applicant for temporary resident status under section 210 of the Act, 8 U.S.C. § 1160 (1988).

FOR RESPONDENT: Ali Golchin, Accredited Representative, San Diego, California

FOR THE IMMIGRATION AND NAURALIZATION SERVICE: William Manoogian, General Attorney

BEFORE: Board En Banc: SCHMIDT, Chairman; DUNNE, Vice Chairman; VACCA, HEILMAN, HOLMES, HURWITZ, VILLAGELIU, FILPPU, COLE, ROSENBERG, MATHON, and GUENDELSBERGER, Board Members.

DUNNE, Vice Chairman:

In a decision dated April 24, 1995, an Immigration Judge found the respondent deportable under section 241(a)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(2) (1994),[1] for entering without inspection, and statutorily ineligible for suspension of deportation pursuant to section 244(a) of the Act, 8 U.S.C. § 1254(a) (1994), but granted him relief in the form of voluntary departure under section 244(e) of the Act in lieu of deportation. The respondent appealed the Immigration Judge's decision. The appeal will be dismissed in part and sustained in part, and the record will be remanded to the Immigration Court for further proceedings.

---

[1] This section of the Act has been revised and redesignated as section 241(a)(1)(B) of the Act, 8 U.S.C. § 1251(a)(1)(B) (Supp. II 1990), by section 602(a) of the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, 5078, but that amendment does not apply to deportation proceedings for which notice has been provided to the alien before March 1, 1991. *See* section 602(d) of the Immigration Act of 1990, 104 Stat. at 5082.

## I.  PROCEDURAL HISTORY

The record reflects that the respondent is a 26-year-old native and citizen of Mexico. The Immigration and Naturalization Service alleges that he entered the United States without inspection. The record indicates that the respondent applied for temporary resident status in 1988 pursuant to section 210 of the Act, 8 U.S.C. § 1160 (1988). On January 22, 1991, the Service issued the Order to Show Cause and Notice of Hearing (Form I-221) upon the respondent, charging him with being deportable pursuant to section 241(a)(2) of the Act. On September 18, 1991, the Service granted the respondent work authorization and issued him an Employment Authorization card (Form I-688A). On October 19, 1991, the Immigration Judge granted the respondent's request to administratively close his hearing pending the resolution of his temporary residence application. On November 16, 1992, the Service moved to recalendar the respondent's proceedings. The Immigration Judge thereafter sent notice to the respondent on December 2, 1992, that his hearing was recalendared for March 2, 1993. On March 2, 1993, the respondent appeared without counsel, and the Immigration Judge continued the case until June 2, 1993, to allow the respondent more time to secure representation. Prior to the respondent's actual merits hearing, however, he departed the United States on May 2, 1993, for a 3-day trip to Mexico in order to visit his ill father.

The merits hearing regarding the respondent's deportability and his application for suspension of deportation commenced on May 17, 1994, at which time the Immigration Judge considered a motion, filed by the respondent on December 11, 1993, to suppress the Service's Record of Deportable Alien (Form I-213). The Immigration Judge ultimately granted the motion and suppressed the Service's Form I-213 evidence due to the egregious nature of the respondent's arrest.[2] The parties have not appealed the suppression of the respondent's Form I-213, and we find no need to repeat the Immigration Judge's detailed description of the respondent's egregious arrest.

## II.  DECISION AND APPEAL

Notwithstanding the suppression of the Service's Form I-213, the Immigration Judge found that the respondent was not a citizen of the United States and that he entered the United States without inspection. The Immigration Judge based his finding of alienage on a copy of the respondent's Form I-688A, which had been submitted to the court by the respondent in conjunction with his 1991 motion to administratively close his proceedings. He also found the respondent ineligible for suspension of deportation because he

---

[2] The Immigration Judge also denied the respondent's motion to terminate proceedings, and the respondent's attorney's request to withdraw as counsel.  The denial of these two motions has not been appealed.

determined that the respondent meaningfully interrupted his continuous physical presence in the United States when he departed the country on May 2, 1993. The respondent appeals both of these findings. We find that while the Immigration Judge properly found the respondent deportable, we must remand the record for a reconsideration of the respondent's suspension eligibility.

## III. THE RESPONDENT'S DEPORTABILITY

We first address the respondent's deportability. The respondent argues that the Immigration Judge erred in relying on the respondent's Form I-688A because this evidence should have been suppressed as a product of the Service's egregious conduct pursuant to the exclusionary rule. We disagree.

Initially, we agree with the respondent that the exclusionary rule would exclude any evidence resulting from his egregious arrest. In *INS v. Lopez-Mendoza,* 468 U.S. 1032 (1984), the United States Supreme Court left open the possibility that the exclusionary rule might apply in immigration proceedings involving "egregious violations . . . that might transgress notions of fundamental fairness." *Id.* at 1050. Thereafter, the United States Court of Appeals for the Ninth Circuit, in *Orhorhaghe v. INS*, 38 F.3d 488 (9th Cir. 1994), applied the exclusionary rule to preclude the admission of evidence which the court had determined was the result of egregious government conduct. The respondent's case arises within the jurisdiction of the Ninth Circuit.

Irrespective of the applicability of the exclusionary rule, we do not agree that the respondent's own voluntary submission of his Form I-688A is a product of his illegal arrest. Even in the criminal context, in which it is not required that "egregious" conduct be demonstrated, it is well established that "(t)he exclusionary rule has no application where the government learned of the evidence from an independent source." *Segura v. United States,* 468 U.S. 796 (1984); *United States v. Guzman-Bruno*, 27 F.3d 420 (9th Cir.), *cert. denied,* 513 U.S. 975 (1994). Here, not only is there independent evidence of the respondent's deportability, but the respondent himself willingly and independently provided the evidence. As the Supreme Court observed in *INS v. Lopez-Mendoza, supra*, at 1039, the "body" or identity of an alien is never itself suppressible as a fruit of an unlawful arrest. Hence, once the respondent has been placed in deportation proceedings, any evidence which is independently obtained may be relied upon, regardless of the alleged illegal arrest. Such independently obtained evidence may consist of the statements made by the respondent at the hearing, or be obtained from independent sources. *See Rodriguez-Gonzalez v. INS*, 640 F.2d 1139, 1140-41 (9th Cir. 1981) (finding that illegal arrest and interrogation do not preclude reliance on voluntary admissions at the deportation hearing); *Matter of Carrillo*, 17 I&N Dec. 30 (BIA 1979) (finding that the voluntary statement given at the hearing rendered unnecessary the inadmissible testimony obtained in violation of

Fifth Amendment right to remain silent). We find that these precedents amply support the Immigration Judge's decision to admit the respondent's Form I-688A.[3]

The burden of proof in deportation proceedings does not shift to the alien to show time, place, and manner of entry under section 291 of the Act, 8 U.S.C. § 1361 (1994), until after the respondent's alienage has been established by clear, unequivocal, and convincing evidence. *Murphy v. INS*, 54 F.3d 605 (9th Cir. 1995); *see also Woodby v. INS*, 385 U.S. 276 (1966); 8 C.F.R. § 242.14(a) (1995). We find that the respondent tacitly admitted his alienage when he filed his 1991 motion to administratively close the hearing to await the outcome of his legalization application. The respondent's work authorization form, issued by the Service on September 18, 1991, and properly introduced into evidence, buttresses the Immigration Judge's conclusion of the respondent's alienage. *Woodby v. INS, supra.* In rebuttal, the respondent has not made a case for citizenship, nor has he denied that he submitted his Form I-688A to the Immigration Judge in 1991. The respondent cannot now argue against the propriety of his own 1991 tactical decision. *Matter of Velasquez,* 19 I&N Dec. 377 (BIA 1986). In sum, we find that the respondent's deportability has been demonstrated by clear, unequivocal, and convincing evidence. *Woodby v. INS, supra.*

## IV.  SUSPENSION ELIGIBILITY

However, we find merit to the respondent's appellate contentions regarding his suspension eligibility. The Immigration Judge found that the respondent could not demonstrate 7 years of continuous physical presence in the United States due to his 1993 3-day trip to Mexico, which the respondent undertook during the pendency of his deportation proceedings. As authority for this determination, the Immigration Judge cited *Matter of Becerra-Miranda,* 12 I&N Dec. 358 (BIA 1967), in which we found that the Service had properly brought exclusion proceedings against a lawful permanent resident who attempted entry into the United States after departing during the pendency of his deportation proceedings. Therein, we held that almost any departure from the United States during deportation proceedings could constitute a "meaningful departure" because a

---

[3] The respondent alternatively argues that the Immigration Judge violated statutory and regulatory procedure when he entered the Form I-688A document as an exhibit in the deportation proceedings. The respondent correctly points out that by statute, Congress has prevented the Immigration Court from reviewing the "files and records" of the respondent's legalization application without the respondent's consent. *See* section 210(b)(5) of the Act. The respondent's voluntarily submission of a copy of his Form I-688A to the Immigration Court in support of his 1991 motion to administratively close his proceedings indicates his waiver of any confidentiality requirement, and we therefore do not reach the question whether a Form I-688A constitutes "files and records" within section 210 of the Act.

> reasonable man, being advised that deportation proceedings were pending against him on a charge known to him, and that a hearing had been set, . . . would have been put on notice that the continuance and legality of his status in the United States was in question. A departure from the country, for no matter what purpose, under those circumstances could reasonably be assumed to carry with it the possibility that it might change the applicant's status in the United States and his ability to reenter.

*Id*. at 363; *see also Rosenberg v. Fleuti,* 374 U.S. 449 (1963). We agree with the Immigration Judge's general application of *Matter of Becerra-Miranda* to the respondent's facts, but we note that the respondent herein, unlike the alien in that case, was readmitted upon his return pursuant to section 210 of the Act. Moreover, the respondent herein is attempting to demonstrate eligibility for suspension of deportation, rather than arguing the propriety of exclusion proceedings. We find these distinctions significant.

## A. Section 210 of the Act

The record indicates that at the time of his May 2, 1993, departure, the respondent had a pending application for temporary residence pursuant to the Seasonal Agricultural Worker ("SAW") provisions set forth at section 210 of the Act.[4] The accompanying regulations, drafted subsequent to our decision in *Matter of Becerra-Miranda, supra*, provide that permission to travel abroad and return to the United States may be granted to such SAW applicants by the Service. 8 C.F.R. § 210.4(b) (1995). In the respondent's case, the record indicates that the respondent was indeed inspected upon his return to the United States and was admitted upon presenting his Form I-688A Employment Authorization card. We find, under these circumstances, that the respondent's 3-day departure from the United States to visit his ill father may be considered brief, casual, and innocent. This is so regardless of his pending deportation proceedings.

## B. Section 244(b)(2) of the Act

Like section 210 of the Act, section 244 of the Act was amended to include section 244(b)(2) subsequent to our decision in *Matter of Becerra-Miranda, supra*.[5] We find the reasonableness test set forth in *Bercerra-Miranda* inapplicable within the suspension of deportation context. When we addressed the *Fleuti* doctrine in *Matter of Becerra-Miranda, supra*, the Supreme Court had created the doctrine to benefit lawful permanent residents maintaining legal status at the time of their departure from the United States. Conversely,

---

[4] Section 210 was added to the Act by section 302, Act of November 6, 1986, Pub. L. No. 99-603, 100 Stat. 3359, 3417.

[5] Subsequent to the release of *INS v. Phinpathya*, 464 U.S. 183 (1984), Congress added section 244(b)(2) to the Act, which provides that an alien who made a departure is not considered to have failed to maintain continuous physical presence if the absence from the country was brief, casual, and innocent. *See* section 315(b) of the Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, 100 Stat. 3359, 3439-40 (1986).

the brief, casual, and innocent departure language set forth at section 244(b)(2) of the Act presupposes that the alien in question may not maintain legal status in the United States. Therefore, a reasonable undocumented suspension applicant would know that any departure during the pendency of his 7 years of continuous physical presence in the United States carries "the possibility that it might change [his] status in the United States and his ability to reenter." *See Matter of Becerra-Miranda, supra*, at 363. A stringent application of the reasonableness rationale, in the context of section 244(a) suspension applications, would render section 244(b)(2) largely meaningless. Moreover, section 244(a)(1) of the Act requires an applicant for suspension of deportation to demonstrate physical presence in the United States "for a continuous period of not less than seven years immediately *preceding the date of such application,*" rather than from the date of the Service's issuance of the Order to Show Cause. (Emphasis added.) We find no indication that section 244(b)(2) on the other hand, applies only to those suspension applicants who departed the United States prior to the commencement of their deportation proceedings.

## V.  CONCLUSION

We find that within the context of section 244(a) of the Act, the Service's decision to readmit the respondent as a legally returning applicant for legalization lends support to the respondent's argument that his departure was brief, casual, and innocent. The purpose of the respondent's trip, to visit his ill father, similarly supports a finding that the trip did not meaningfully interrupt his continuous physical presence in the United States. Lastly, the respondent spent only 3 days in Mexico prior to his readmission to the United States, and we also find this period of time brief within the meaning of section 244(b)(2). In sum, we find persuasive evidence to support the respondent's argument that his 1993 3-day departure to Mexico did not meaningfully interrupt his 7 years of continuous physical presence in the United States for purposes of establishing eligibility for suspension of deportation. *See Castrejon-Garcia v. INS,* 60 F.3d 1359 (9th Cir. 1995). We will therefore remand the record for further proceedings to determine the respondent's eligibility for that relief.

**ORDER:**     The appeal from the Immigration Judge's finding of deportability is dismissed. The appeal from the denial of suspension of deportation is sustained.

**FURTHER ORDER:**     The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing decision.